3-17-03-03 The Estate of Shaqifi Mehmedi, deceased, affiliated by Nancy Shell, v. Mehmedi, account of intrigued mead. Mr. Justice, Mr. Justice, Madam Justice, opposing counsel, may it please the court. As the clerk has indicated, my name is Tariq Mead, and I represent Nafail Mehmedi, who is the appellant in this case. We're appealing the decision of the Honorable Patricia Walton to grant summary judgment in favor of the estate, the decision being entered on June 24, 2016. Was that a final order? I don't believe so, Your Honor, because it does not result in the judgment in this case. So if the court, I've got the appendix here at A2. If the court sees the language of the order on A3, the order of the court is somewhat, at least to me, confusing, and I'll address that a little bit further later. But this order of the court did not result in any money judgments or any final money judgment against the appellant in this case. He was ordered subsequent to this to file an accounting detailing what had happened with the proceeds that we allege were in error included in the decision to stay. There was no determination of rights? Well, there is. I'm asking. We must raise issues, though. Of course. Did you address that in your brief? Not as such, Your Honor. I don't think the appellee… You're already closing the counsel. No. I'm just wondering why we're here. Well, I believe you do, Your Honor, and I'm sure the appellee will have something to say about that, too. But the final judgment in this case did not arise until later on after Mr. Mulaney was unable to present an accounting that accorded the proceeds and distributions from the amount of money that was, again, we allege in error included in the decision to stay. And so it would be our position that upon that judgment being entered against Mr. Mulaney, that was the final judgment. What did the summary judgment determine? The summary judgment determined the issue of whether or not the proceeds of the sale of the house in this case should have been included in the decision to stay. What's at issue here? I beg your pardon? What's at issue here? Whether the trial court was correct in making that determination. And so why are we here? Why are we not out of time? Well, because the final judgment, Your Honor… What is the final judgment? I beg your pardon? In accounting. What's in accounting? Well, you just simply, where's the money? Isn't it? So, Your Honor, if I could address that issue. The trial court ruled that while he was power of attorney, Mr. Mulaney included that $121,000 should have been included in the decision to stay. So, Mr. Mulaney is only liable to the estate to the extent either that that money has gone someplace that it shouldn't have gone or was otherwise not distributed in accordance with, in this case, Mr. Mulaney's senior, Shafki Mulaney, had a will that, among other things, provided… It's a pretty simple case, isn't it? That there's an auction, house is sold, 20 acres is sold, proceeds are given to your client. Yes. And they are deposited into a joint account. Yes. With right of survivorship. That's correct. That's what happens. But I would disagree with the court's assertion that it's a simple case. And I think I've got some argument on why that should not be the case. If I could then circle back around to address, because I don't think I've fully addressed the court's issue of timeliness of filing the appeal. I do want to make sure I do that, because I don't want to come back in four months and find out that the court raised that on its own and we're done. So, the answer for that is… That's a danger. I'm a little worried about it, and so I'll try to address it now. The money judgment that finally determined the rights of the parties issued substantially later, once there was a determination that Mr. Money was unable to account for the entirety of the proceeds. And so when that became clear, that's when a money judgment for the amount, I think, and by the time that arose, I mean, there had been substantial retrial interest. There was an award of attorney's fees at that point also to Michelle. And it was at that point, the appellant would argue, that's when the final determination of rights between the parties came about. And so that's the final judgment that creates the Rule 301 appeal. I would certainly argue that if we had tried to file a notice of appeal on… So, I think this order that we're appealing from was issued June 24th of 2016. If we had tried to appeal on June 25th, no money judgment yet would have entered. And so we wouldn't have had a final determination of the rights of the parties because there still would have been a substantial question of how much money Mr. Money actually owed the estate if the court was correct in making the determination that it did at that point. So, I would contend that Rule 301 jurisdiction is hatched substantially later and certainly less than 30 days before the ultimate notice of appeal was filed in this case. And that is the jurisdiction that we're alleging that the court has is this Rule 301 final judgment. It's not interlocutory, it's just a plain old final judgment jurisdiction. And again, we would certainly argue that the court has it. So, hopefully having addressed that, I'm certainly happy to answer any other questions that the court might have on that topic. I do want to again push back respectfully on the court's assertion that this is a simple case. I don't think it is. And I think the reason, I think all the evidence that we need that it's not a simple case is contained in the court's order of June 24th, which is pages A2 and A3 in the appendix. So, the basis for the court entering this judgment or granting summary judgment on the issue of whether the $121,000 should have been included in the decedent's first estate and thus distributed according to the terms of his will, is that when it was placed in the joint account following the sale at auction, that Mr. Mametti had exceeded the scope of his power of attorney. So, it's not clear exactly from the order on what basis the court made that determination. But I think if you turn, but the court did adopt the conclusion or the argument of the estate in this matter, the Appellee, which I think is where we find the support for that. So, in the Appellee's motion for summary judgment, which is also part of the appendix, on page, excuse me, so it's page A14 of the appendix, which is part of the estate's motion for summary judgment, the estate argued that the reason why he exceeded the scope of his authority as power of attorney was because he had failed in placing those funds in the joint account. He had failed to take into account the estate plan of the decedent. And he was required under the language of the power of attorney to, when he's moving around assets, he's supposed to take into account the estate plan. So, I think the argument that the estate is making is, well, he frustrated that by taking proceeds from his sale and placing them in this joint account that creates a right of survivorship. So, the thrust of my brief is that that is just absolutely too great a leap in logic for the court to have made based on the facts that it was presented. As the estate argued in its reply brief to our response to the motion for summary judgment, the evidence of this guy's estate plan is his will. I mean, that is it. That's all we've got. And I think I made an argument in the brief also that the advance act would have precluded anything else from coming in. The only evidence that we have of this guy's estate plan that my client, the appellant, was required to follow under the power of attorney is just what his will says. And his will is pretty simple. In fact, it was executed the same day as the power of attorney. That's the simple part of the case is what his will said. He wanted to give his truck to his girlfriend, his Paula Height, who was his parent-in-law. And then whatever else is left over, you know, whatever the residue of his estate is, that is supposed to go to his five-kid split even. And that is, I mean, I probably drafted a hundred wills like that even in the short amount of time I've been practicing. You know, you make one or two specific gifts and you give everything else to your descendants for service. So by its very definition, like a residual gift is not specific. A residual gift says just whatever else I have when I pass away and at that time, I want to give that to my descendants. That's what I want to give away. And there is a mechanism. If he wants to give the proceeds of his house to his kids, he can do that. You know, there is a very simple way to do that. And we knew we knew about it because that's what he did with his truck. You know, he gave a specific gift of his truck to his girlfriend. He also could have given a specific gift of the proceeds of the house to his children, but he didn't. That's not what his will says. And so I know in Apelli's brief, there was a lot of argument about whether we're asking for the will to be constricted the first time in this case. I would really respectfully say that we are not. The judgment that the trial court entered relies on a construction of the will to reach the conclusion that this guy's power of attorney was that the scope was exceeded. Because of the reliance on the alleged lack of reliance on his estate plan. So, you know. Were there any other assets? I beg your pardon? Were there any other assets? Nominal, I think there were the personal properties. So, and this also, this comes from talking about jurisdiction. This may be the only case that this court has heard where a Macedonian resident's will is being probated in Fulton County. So, that was not raised by me either. But this is a Macedonian person living in Macedonia at the time of his demise, whose assets are being distributed through the Fulton County Circuit Court. So, there may be somewhat of an issue there as well. The other assets were nominal, other than the truck. And, in fact, there was a little bit of an issue with that at the trial court level too, as the court may have noticed. There was an argument about what's a judicial remission in the motion for summary judgment and the response. Not our office, but a different office that represented the appellant before we did, had filed a petition for the probate of the will estimating the assets, the personal assets that were exceeded at $121,000 when he passed away. And so, we filed numerous attempts at the circuit court level to try to amend that pleading. One, just to amend it on its face to say zero were nominal for the estimated assets of the decedent. And, again, you know, the reason for that is because our contention the whole time has been, well, this isn't a joint account with the right of survivorship. That passed outside the estate to my client. So, those motions were denied. But we still argue that there's no judicial remission because judicial remission requires a certainty. You know, I think the case law is very clear on that, that we submitted as part of our brief on the response to the motion for summary judgment. It can't be an estimate under Illinois law. And the petition to issue letters of testamentary requires you to estimate what the value of the estate is for a couple of different reasons. I think, if for no other reason, first off, to determine whether probate is necessary in the first place because of the existence of the small estate affidavit. And also because I believe it's the practice, not of Fulton County, but of some counties, to vary the filing fee to open a probate estate based on the gross assets of the estate. So, I think you've got to make an estimate, just like you do in, like, if a case is going to be a small claim, to try to determine how much money we're talking about so the court can devote the appropriate filing fee for it. So, that's a long way of answering your question. No, I think the other assets were nominal. And, Mr. Justice, I think I took Madam Justice's question, but did you have something else that I needed to address? When the sale occurred through, apparently, auction, when that sale occurred, the decedent, now decedent, was still alive. He was. Yes. And the power of attorney empowered your client to do that. That's right. There's no question about that. I don't believe anyone has raised a claim. I certainly believe that. I don't believe anyone's confessed to that. That was within the memorandum of powers, either under the statute or in the document? I think both, in this case, yes. Okay. Yes. Then, whose property was it? It was Chucky's property, Mr. Renetti Sr., that was sold pursuant to the authority granted in the power of attorney. So, I think this is where we're getting... Was there a conversion aspect? Okay. I was just about to address that question. I'm glad you asked that. I think the answer is that there may have been. But the court was not yet ready to address that issue on a summary judgment motion, and I think that's why the court didn't. You know, as you can see, the only ruling that the circuit court made on this was that he had exceeded the scope of his power of attorney. There was an argument raised by the estate at the summary judgment level that there's a presumption that arises when someone retitles assets pursuant to the authority of the power of attorney. A presumption arises that that's either fraudulent or done in bad faith. And, again, that is just a presumption. So, there wasn't a lack of issue of this real fact at the trial court level as to whether that was, in fact, what had occurred. I think that's why the court did not make that ruling. Counsel, that's two minutes. Thank you. I think another important distinction to make on that is that... I think you're trying to say that exceeding the power of attorney powers. Yes. Was a finding by the court. And I think that's the only finding that the court made in that most official... So, you're saying you don't know what the exceeding what powers. Well, no, I think we do know what the court said it exceeded. We're saying that it exceeded the scope of the power of attorney because he was supposed to take into account the estate plan. And so, again, and certainly the thrust of my brief was that the court couldn't make that determination based on the evidence that it had because the only evidence that the court had was this will. And the will doesn't say anything about the house or where it's supposed to go. But it could have. I mean, the counterfactual is easy to envision. You know, the counterfactual is that he says, well, I want the truck to go to my girlfriend, and I want the house or the proceeds that are owed to go to my five kids. Like, he could have written that, but he didn't. And, in effect, by the trial court ruling the way it did, it's sort of like it's leapfrogging that because it's saying, well, like, we're determining that that was his estate plan, even though there wasn't any evidence, and that's the reason why we can tell that you violated, that you've exceeded the scope of your power of attorney. That's why you're liable. That's why we're going to grant summary judgment to you. So, again, we've gone through four steps there, and that's why I don't think this is quite as simple of a case as the facts might show. I think there are dimensions to it. I think, again, the reason why it's not as simple as, well, like, he put it in his own name, that's it, is because, again, it's only a presumption. And at the summary judgment level, the court wasn't ready to address that. And, again, I think that's why it didn't. That's why that finding is not contained in the G24th order. And I'm not going to stand here and say that after appropriate finding of facts, the court couldn't come to that conclusion. You know, we don't know until we have the finding of facts. But at least at this stage, that hasn't happened. And so just to recap my argument, there is jurisdiction, first off, because within 30 days after a final judgment entered, a timely notice of appeal was filed. And the court erred when it concluded, based on the evidence that it had, that he exceeded the scope of his power of attorney and thus was liable to the estate to have those assets placed back in the estate. Thank you. Oh, I'm sorry. Do I need to address any further questions? I'm sorry. Apparently not. Okay, thank you. I apologize. Your Honors, counsel, may it please the court, I will address your two questions first before I make any argument. In the order granting our motion for summary judgment, Judge Walton left the case kind of open because we didn't know if there were further assets and expenses, didn't know if there were any claims to be made. This was kind of the beginning of, yes, now we know there's assets in the estate. We need to proceed with the probate. So I think that's why it was not made a final judgment. What do you think that summary judgment actually said? That there are assets. What did you go into Judge Walton's courtroom and ask under summary judgment for? That the assets that were from the sale of the personal property and the real estate of over $121,000 were assets of Shefky Mametti's estate and were not assets of LaFeo Mametti who put that money into a joint account. And what did the trial judge rule at the conclusion of that summary judgment? That that money was in Shefky Mametti's estate. Which is what you asked for. Right. And she also said that if there are further assets or expenses, those can be determined at a later date. But you didn't ask for that, did you? No, but we had not filed a claim. No one had filed claims or anything else in the estate. But you asked for a court ruling. Yes. And you got it. Yes. And when do you appeal that? Well, we probably should have asked her to make it a final appeal of order and make them go forward then. Okay. And one of your questions on were there other assets. There are other assets in Mr. Mametti's estate, but they're all in Macedonia. He did have land there. And my understanding is that's all been distributed to the five children. And LaFeo Mametti was not in charge of that. But these are the only assets that were in this country. And that was the sale of his real estate and personal property. And as I pointed out in my brief, this conversion of the assets by LaFeo Mametti under his power of attorney is fraudulent. There's a presumption of fraud in that. There's also a presumption of undue influence. And that's brought out in the estate of Victoria Polinsky. We don't have undue influence here because Chesky was not in this country, so there wasn't any influence over it. But we do have fraud that Mr. LaFeo Mametti fraudulently conveyed the truck, for one thing, that was supposed to go to Paula Haight, and then the assets from the sale of the real estate and personal property and conveyed that to himself as well. So there needs to be a showing of clear and convincing evidence to rebut that presumption. There was no evidence. LaFeo Mametti didn't even show up to the citation hearing to testify. He presented no evidence to show that he was justified in doing that or had a basis for doing that. Another case that's on point here is out of this district, Spring Valley Nursing Center v. Mary Allen. Here a son had transferred a life estate interest to himself from his mother, didn't pay for it, and then he used his power of attorney to pay back taxes from his mother's account. And the court found that there was a presumption of fraud there and that he did not present any clear and convincing evidence to overcome that presumption. The same thing in the estate of Wilma Rieboldt. Her grandson had used his power of attorney to transfer some of her CDs to his name, about $55,000, that ended up being joint, even though he was not even a beneficiary in the will and would have received nothing. But because he jumped in, took care of her, got the power of attorney, he used that to convert the assets. Same thing that LaFeo Mametti has done with Schepke's. He used his power of attorney to convert Schepke's estate, all of it, to his name. So he distributed nothing to any of the other children, distributed nothing to Paula Haight, who did not give her the vehicle. He took that for himself, conveyed it to himself, I believe the day after he was served with our petition, the probate petition, and just started withdrawing more and more of that money from that account until he finally, even after the finding that $121,000 was in Schepke's estate, LaFeo closed the account and took the last $12,000 out of that account. So he was ordered to present an accounting to come and testify. He didn't present any evidence. He never presented a verified accounting, even though the court ordered him to do that, ordered him to do it within 21 days or put himself into the Fulton County Jail, which he never did that either. He's just blatantly ignored the court's orders and taken his father's money. So we would ask the court to affirm the trial court's decisions and judgment and rule in our favor. Any questions? Yes, ma'am. Thank you. Thank you. Mr. Reed, any questions? Thank you. So with due respect to opposing counsel, we've heard some argument this afternoon about what a bad guy my client is. And I would respectfully submit to the court that that doesn't bear on the issue before the court as to what the appeal is. The appeal is as to the nature of what's to be included in Schepke's Gross Estate. And again, that's the nature of that $121,000. It's true, and I brought it up at least briefly in my case in chief as well, that he was not able to account for the money. He was not able to do that. There's no disputes to that. And so, again, the defense and the nature of the appeal is that the court erred when it included that money in the state in the first place. Because at least based on the evidence that it had available to it at that time, there wasn't enough to make the determination that that money should have been included in Schepke's Gross Estate at that time. Again, that evidence is limited to the will. The will did not say anything relative to the house or the sale of the proceeds thereof. And again, Illinois law has a clear mechanism to make that discrimination, if that's what the testator wants to do when they're making a will. So, again, we would respectfully suggest that that's not a proper conclusion that the court came to, that the court should be reversed on that. And we would also respectfully suggest, I think, opposing counsel cited a couple of cases. And in both of those cases, they are distinguishable on the issue of this alleged fraud that he committed. And first off, again, I think the most important argument is that the court didn't have enough information at the summary judgment phase to make that determination that there was still a genuine issue, this real fact, as to what actually happened. You know, I wish I could cite this off the top of my head. I don't remember the procedural posture of those two cases. But from reading them some time ago, it's my recollection that they both occurred after trial. So I might be wrong about that, but that is the recollection that I have. I would also say that both of those cases, I think we heard one involve placing property that was previously just in the feed in a life estate for the parent with the remainder that is retitling a present asset. The other one involved a case in which the woman's will said that she wanted to provide for all her children. The power of attorney in that case, again, retitled a present asset in his name as well. That's not what happened here. You know, there is a house that is sold, and then the proceeds are placed in a different account. And so I can almost feel opposing counsel making a traceability argument behind me, but that is not what the case law says. The case law says that it's retitling a present asset in the power of attorney's name and the principal's name, under the power of attorney, that creates that presumption of either fraud or undue influence, depending on which case you're reading. And again, it's a sale of somebody who has moved to Macedonia, who a couple of months later, just the timeline briefly, power of attorney was executed in April. Shortly thereafter, the principal, also the decedent on the power of attorney, moved to Macedonia, his homeland, where he's from. And then in August, the sale occurs. The proceeds are placed in the account, which lists the appellant's name as well. And then in October, the decedent passes away. So we're looking at about a six-month timeline here from when the will was signed to the ultimate demise of the decedent. And so this is distinguishable from the other two cases, or from the two cases that the estate cites, because, again, we're looking at assets that were sold and then placed in an account once they've been liquidated, not the present retitling of assets as in those two cases. So I think, first off, there's an argument as to whether that presumption arises. I could certainly, with all due respect to the court, imagine a court ruling that assets that are traceable create that same presumption. I don't think that any court has yet ruled that, that I can see. So, you know, I don't think that's the law yet. But, again, even if the court did rule that, all that would create is the presumption that can be rebutted after evidence is presented, not something that's appropriate to result in summary judgment, as is what happened here. So, again, the court didn't rule that. You know, the court ruled that he exceeded the scope of his power of attorney. I'm just anticipating perhaps the court might think it was harmless error, you know, and thus that's the rebuttal as to the presumption that that might be harmless error. That is because it could have been resolved on summary judgment. It would have had to go to trial. Thank you. I don't know if the protocol, do I get to answer any questions if the panel has any? No. Okay. Thank you, Your Honor. It's my first time. Congratulations. Thank you. Thank you. All right. Well, thanks both of you for coming out on this day. I would like to take this matter under advisement. If I had actually written this position, it would have been a short day.